UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| TERESA BLACKWELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 7:19-cv-144-GMB ) |
| ANDREW M. SAUL,[1] Commissioner, Social Security Administration, | ) ) ) |
| Defendant. | ) ) |

# MEMORANDUM OPINION AND ORDER

On April 15, 2016, Plaintiff Teresa Blackwell completed an application for disability and disability insurance benefits. Her alleged disability onset date is May 19, 2014. Blackwell's application for benefits was denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on December 11, 2017, and he denied Blackwell's claims on April 27, 2018. Blackwell requested a review of the ALJ's decision by the Appeals Council, which declined review on November 27, 2018. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of November 27, 2018.

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 5, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Saul for Nancy Berryhill as the proper defendant in this case.

Blackwell's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Upon review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be reversed and remanded.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not

warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The claimant bears the burden of proving that she is disabled, and she is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

> (1) Is the claimant presently unable to engage in substantial gainful activity?
> (2) Are the claimant's impairments severe?
> (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform her former occupation?
> (5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III. FACTUAL BACKGROUND

Teresa Blackwell was 52 years old at the time of the ALJ's decision. R. 30 & 32. She lives in a home in Cottondale, Alabama. R. 43. Her primary complaints are diabetes, atrial fibrillation, Graves disease, dysphagia, neuropathy, aortic insufficiency, tricuspid insufficiency, mitral insufficiency, edema, and carpal tunnel syndrome. R. 166. She alleges that these conditions have prevented her from employment beginning on May 19, 2014. R. 166.

Blackwell obtained her high school diploma in 1984. R. 157. From August 2003 until May 2010, Blackwell worked as an attendance clerk for the Tuscaloosa County School System in central Alabama. R. 158. Her primary task was data entry of attendance records. R. 43. Before that, she was a substitute teacher in Tuscaloosa

County. R. 44.  In 2010, Blackwell was laid off due to staffing cutbacks within the school system. R. 157.

The ALJ held a hearing in Blackwell's case on December 11, 2017. R. 38. During the hearing, a Vocational Expert ("VE") classified Blackwell's past work as an attendance clerk as sedentary[2] and skilled. R. 56.  The ALJ posed the following hypothetical to the VE:

> I'd like you to assume a hypothetical person the same age, same education, same past work as the claimant.  We'll assume this person's limited to light, unskilled work.  Not requiring complex instructions or procedures with no climbing of ropes, ladders, or scaffolds.  No work in unprotected heights with hazardous machinery.  No more than occasional climbing of ramps or stairs.  No more than frequent handling, bilateral.  No concentrated exposure to extreme heat or cold.  No more than occasional balancing.

R. 57.  The VE responded that this individual could not perform Blackwell's past work. R. 57.  However, the VE testified that this individual could perform work in the national economy. R. 57.  For example, the hypothetical person could work as a general office clerk, a receptionist, an information clerk, or a cashier. R. 57–58.  The ALJ then asked whether this individual could find work if she needed to be off task for 20 percent of the eight-hour workday. R. 58.  The VE responded that an individual with these characteristics could not find gainful employment in the

---

[2] Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

national economy. R. 58. The VE also testified that this individual could not find work if she needed to miss three or more days of work per month. R. 59. The ALJ asked whether this person could find a job if limited to sedentary work and only occasional handling bilaterally. R. 58. The VE answered that this hypothetical individual could work as a surveillance system monitor. R. 58. Blackwell's attorney did not examine the VE. R. 59.

The ALJ issued his decision on April 27, 2018. R. 32. He found that Blackwell last met the insured status requirements of the Social Security Act on December 31, 2015. R. 24. Under step one of the five-step evaluation process, the ALJ found that Blackwell had not engaged in substantial gainful activity since her disability onset date of May 19, 2014 through her date last insured of December 31, 2015.[3] R. 25. The ALJ concluded that Blackwell suffers from the following severe impairments: atrial fibrillation, diabetes, venous insufficiency, carpal tunnel

---

[3] To qualify for disability benefits, a claimant must have worked long enough to acquire sufficient quarters of coverage. For example, a claimant may be required to acquire 20 quarters of coverage during a 40-quarter (*i.e.*, 10-year) period to receive disability benefits for that time period. The date a person runs out of sufficient quarters of coverage is known as the date last insured. "[I]nsured status is a basic factor in determining if [a claimant is] entitled to old-age or disability insurance benefits or to a period of disability." *See Alexander v. Comm'r of Soc. Sec.*, 435 F. App'x 813, 816 (11th Cir. 2011). Here, the ALJ determined that Blackwell ran out of quarters of coverage after December 31, 2015. She would not be eligible for disability benefits after this date. *See Burden v. Barnhart*, 223 F. Supp. 2d 1263, 1268 (M.D. Fla. 2002) ("The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.") (internal citations omitted).

syndrome, hypothyroidism, and neuropathy under 20 C.F.R. § 404.1520(c). R. 25. The ALJ noted that these medically determinable impairments significantly limit Blackwell's ability to perform basic work activities. R. 25. But the ALJ concluded at step three of the analysis that none of Blackwell's impairments satisfied or medically equaled the severity of those listed in the applicable regulations. R. 26.

At step four, the ALJ determined that Blackwell has the residual functional capacity ("RFC") to perform light,[4] unskilled work not requiring complex instructions or procedures; climbing ropes, ladders, or scaffolds; working at unprotected heights or with hazardous machinery; more than occasional climbing of ramps or stairs; more than frequent handling bilaterally; concentrated exposure to extreme heat or cold; or more than occasional balancing. R. 27. Considering Blackwell's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in the national economy that Blackwell could perform. R. 31. Ultimately, the ALJ concluded that Blackwell was not disabled within the meaning of the Social Security Act from her disability onset date through her date last insured.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or left controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

R. 32. Based on these findings, the ALJ denied Blackwell's claims. R. 32.

Blackwell requested that the Appeals Council review the ALJ's decision in her case. R. 1. During her appeal, Blackwell submitted a new letter from her treating physician, Dr. William A. Hill. R. 7. She previously submitted treatment records from Dr. Hill spanning October 2014 through October 2015 (R. 355–80) and May 2016 through August 2016. R. 493–669. In his new letter, Dr. Hill summarized medical records both before and after Blackwell's date last insured. R. 7. He discussed her present condition and complaints, and concluded that her chief current complaint is significant neuropathy. R. 7. Dr. Hill also noted a few of her previous complaints, including some from before her date last insured. R. 7. Dr. Hill did not provide specific dates for most of the information in his summary of Blackwell's medical records and complaints. After summarizing her records, Dr. Hill wrote that the "patient does have multiple problems, as outlined above." R. 7. He then opined, "In reviewing this patient's history, the patient does have a significant array of problems. . . . Judged on these multiple problems, I do think this patient is disabled from doing any meaningful work." R. 7. He concluded his letter by stating, "I do hope that this note is useful in explaining the multitude of problems that this patient has faced and is facing." R. 7.

The Appeals Council did not consider the letter. R. 1–6. In declining to review the ALJ's decision, the Appeals Council included the following section:

**Additional Evidence**

You submitted a statement from William A. Hill, M.D., dated June 18, 2018 (4 pages). The Administrative Law Judge decided your case through December 31, 2015. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled on or before December 31, 2015.

R. 2. Blackwell timely appealed to this court.

## IV.  DISCUSSION

Blackwell presents two issues on appeal: (1) whether the ALJ properly evaluated the credibility of her pain allegations consistent with the Eleventh Circuit pain standard, and (2) whether the Appeals Council properly rejected the opinion of her treating physician. Doc. 11 at 4. Because the Appeals Council improperly disregarded the opinion of Dr. Hill, the case is due to be reversed and remanded. Any discussion of Blackwell's pain-standard argument is pretermitted.

The Appeals Council declined to consider Dr. Hill's letter because it determined that the letter did not relate to the period at issue. The relevant period is the time during which Blackwell could receive Social Security benefits: from the onset date of her disability through the date she was last insured as an eligible disability benefits recipient. Accordingly, Dr. Hill's letter is chronologically relevant if it pertains to Blackwell's medical condition from May 2014 through December 2015.

Blackwell argues that the Appeals Council improperly decided that the letter

from Dr. Hill was not related to this time period and would not have changed the outcome of the ALJ's decision. Doc. 11 at 11. The Commissioner responds that the "new evidence Plaintiff submitted to the [Appeals Council] does not relate to the period before the ALJ's decision and does not change the picture of what her symptomology was like before her date last insured." Doc. 12 at 19. This argument does not hold water. The court agrees with Blackwell that the additional evidence falls within the relevant time period and may have affected the ALJ's decision.

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. 404.900(b)). The Appeals Council must review a case if it receives additional evidence that is new, material, and chronologically relevant. 20 C.F.R. § 404.970(a)(5); *Ingram*, 496 F.3d at 1261. "[W]hether evidence meets the new, material, and chronologically relevant standard 'is a question of law subject to [the court's] de novo review,'" and "when the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015) (quoting *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003)). New noncumulative evidence is evidence that was not previously presented to the ALJ and "found to be wanting." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Evidence is "material, and thus

warrants a remand, if there is a reasonable possibility that the new evidence would change the administrative outcome." *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011) (citing *Hyde*, 823 F.2d at 459).

"Evidence is chronologically relevant if it 'relates to the period on or before the date' of the ALJ's decision." *Banks v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 709 (11th Cir. 2017) (quoting 20 C.F.R. § 416.1476(b)(1)). Even records that postdate the ALJ's decision may be chronologically relevant when the records assess conditions existing prior to the decision, the physician evaluated medical records from before the ALJ's decision, and there is no evidence of deterioration. *Washington*, 806 F.3d at 1322. The Appeals Council "must review the case if the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 743 (11th Cir. 2008).

But when the additional evidence is merely cumulative or untimely, denial of review may be appropriate. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014). When evaluating a request for review, the Appeals Council is not required to explain its rationale for denying the request. *See Mitchell*, 771 F.3d at 784. On the other hand, it may not perfunctorily adhere to the decision of the ALJ. *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980). And while there is no duty to provide a detailed rationale, the Appeals Council must apply the correct legal

standards. *Mitchell*, 771 F.3d at 784.

In Blackwell's case, the letter from Dr. Hill is "new" since Blackwell did not submit it to the ALJ. The court finds that the letter also is both chronologically relevant and material. As explained above, the relevant time period begins with Blackwell's disability onset date (May 19, 2014) and continues through her date last insured to receive disability benefits (December 31, 2015). The Eleventh Circuit "[has] recognized that medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant . . . if they were based on experiences that had occurred before the ALJ's decision and on a review of medical records from the period before the ALJ's decision." *Ring v. Soc. Sec. Admin., Comm'r*, 728 F. App'x 966, 968 (11th Cir. 2018). This is true even if the physician "never explicitly stated that his opinions related back to the date of the ALJ's decision." *Washington*, 806 F.3d at 1322. For example, the Eleventh Circuit has "concluded that [a] psychologist's materials [prepared seven months after the ALJ's decision] were chronologically relevant because: (1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's mental health treatment records from that period, and (3) there was no evidence of the claimant's . . . decline since the ALJ's decision." *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018). "On the other hand. . . the Eleventh Circuit [has] held that the Appeals Council properly

13

found a medical opinion was not chronologically relevant because (1) nothing in the form or any other documents indicated that the physician evaluated the claimant's past medical records when forming that opinion, and (2) the physician did not begin treating the claimant until after the date of the ALJ's favorable decision." *Carlisle v. Saul*, 2020 WL 1310496, at *10 (S.D. Ala. Mar. 19, 2020) (citing *Hargress*, 883 F.3d at 1310) (alterations adopted).

Here, Dr. Hill's letter is chronologically relevant because it addresses treatment from within the relevant time period. Dr. Hill has treated Blackwell since at least October 2014 and continued to treat her during the relevant time period. His letter appears to be based on Blackwell's description of symptoms both during and after the relevant period, as well as on treatment records during and after the period. Additionally, the letter is not outdated in that nothing about it or any of Blackwell's medical records indicate that her condition has materially declined since December 31, 2015.

The court finds that Dr. Hill's letter and opinions relate to the period between May 2014 and December 2015. Although Dr. Hill's one-page letter cannot be characterized as an exhaustive discussion of Blackwell's medical condition, it highlights certain of her medical records and procedures, including a surgery that occurred before the date last insured. *See* R.7 (mentioning an ablation procedure occurring in October 2014). In addition to specifically referencing this

chronologically relevant procedure, a reasonable reading of Dr. Hill's opinions reveals that that they are intended to encompass the relevant time period even if they do not explicitly state the time period under consideration. For example, he found that Blackwell "does have a significant array of problems" based on his "review[ of] this patient's history." R. 7. He also found that she had "multiple other problems" based on his "review[ of] her charts." R. 7. In conclusion, Dr. Hill noted the historical basis for his findings in stating, "I do hope that this note is useful in explaining the multitude of problems that this patient has faced and is facing." R. 7. Even though the letter does not specify the time period under consideration, the court can only conclude that Dr. Hill's opinions touch on the period between May 2014 and December 2015 when the letter explicitly addresses a procedure that occurred during the time period and repeatedly references its basis in Blackwell's historical medical records. Dr. Hill's letter therefore is chronologically relevant because it is based on Blackwell's medical records and complaints from the relevant timeframe. *Ring*, 728 F. App'x at 968 ("[S]uch opinions could be chronologically relevant if they were based on experiences that had occurred before the ALJ's decision and on a review of medical records from the period before the ALJ's decision."). Moreover, the Commissioner has not pointed to any evidence in the record indicating a material change in Blackwell's health between the date last insured and Dr. Hill's letter, further reinforcing the chronological relevance of Dr. Hill's opinions. *See*

*Washington*, 806 F.3d at 1322 (finding chronological relevance in part because of a lack of any "assertion or evidence that [the claimant's] cognitive skills declined in the period following the ALJ's decision").

The letter also is material. "In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether the opinion is amply supported, whether the opinion is consistent with the record and the doctor's specialization." *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d) & 416.927(d)). "The opinions of non-examining, non-reviewing physicians are entitled to little weight when contrary to those of an examining physician, and taken alone, they do not constitute substantial evidence." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 901 (11th Cir. 2012). The opinions of examining physicians are given more weight than those of non-examining physicians, and the opinions of treating physicians are given substantial weight unless the ALJ shows good cause for not doing so. *See Kelly*, 401 F. App'x at 407. "Absent good cause, an ALJ is to give the medical opinions of treating physicians substantial or considerable weight." *Winshcel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (internal quotation marks and citations omitted). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent

with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).

The Appeal Council therefore would be required to afford Dr. Hill's letter substantial weight unless it articulated good cause for declining to do so. Nothing on the face of the letter suggests that Dr. Hill's opinion is not entitled to substantial weight. Additionally, the ALJ previously afforded Dr. Hill's opinion considerable weight in as much as he relied on Dr. Hill's treatment records in his decision. R. 29–30. There is a reasonable probability that a treating physician's opinion that a patient has "a significant array of problems" and is prevented "from doing any meaningful work" would alter the administrative outcome, making Dr. Hill's letter material to the Appeals Council's determination. *See Flowers*, 441 F. App'x at 745 (finding that evidence is "material, and thus warrants a remand, if there is a reasonable possibility that the new evidence would change the administrative outcome").

The court therefore concludes that Dr. Hill's letter is a new, chronologically relevant, and material piece of evidence. It was thus improper for the Appeals Council to perfunctorily disregard it as unrelated to the relevant time period. Instead, the Appeals Council had a duty to consider the evidence, and its failure to do so was an error of law. Accordingly, the Commissioner's decision is due to be reversed.

## V. CONCLUSION

For these reasons, the court finds that the Commissioner's decision is not

based upon the proper legal standards. Accordingly, it is ORDERED that the decision of the Commissioner denying benefits is REVERSED and this matter is REMANDED to the Commissioner for the purpose of issuing a new disability determination consistent with this opinion.

A final judgment will be entered separately.

DONE and ORDERED on September 1, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE